WO                    NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lucille Gonzalez, | No. CV-15-08078-PCT-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, | |
| Defendant. | |

At issue is the denial of Plaintiff Lucille Gonzalez's Application for Disability Insurance Benefits and Supplemental Security Income by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now considers Plaintiff's Opening Brief (Doc. 22, "Pl.'s Br."), Defendant Social Security Administration Commissioner's Opposition (Doc. 24, "Def.'s Br."), and Plaintiff's Reply (Doc. 30, "Reply").

**I.    BACKGROUND**

Plaintiff filed Applications on July 28, 2011, for a Period of Disability and Disability Insurance Benefits under Title II of the Act, and Supplemental Security Income under Title XVI of the Act, for a period beginning July 1, 2006. (Doc. 11, R. at 196-99.) Plaintiff's last date insured was June 30, 2007. (R. at 14.) Plaintiff's claims were denied initially on January 19, 2012, (R. at 133-40), and on reconsideration on September 6, 2012, (R. at 148-55). Plaintiff testified at a hearing held before an Administrative Law Judge ("ALJ") on August 30, 2013. (R. at 38-58.) On September 18, 2013, the ALJ

issued a decision denying Plaintiff's claims. (R. at 14-30.) The Appeals Council ("AC") denied Plaintiff's request for review on March 13, 2015, making the ALJ's decision the final decision of the Commissioner. (R. at 1-3.) The present appeal followed.

The Court has reviewed the medical evidence in its entirety and provides a short summary here. The ALJ found that Plaintiff has severe impairments of ankylosing spondylitis—a chronic, progressive, inflammatory disorder principally affecting the joints with symptoms similar to rheumatoid arthritis (Pl.'s Br. at 5 n.7)—as well as degenerative joint disease of the right hand, degenerative disc disease of the lumbar spine, arthritis, anxiety, depression and obesity. (R. at 17.) Plaintiff received treatment for right wrist pain beginning in 2003 and underwent a right carpal tunnel release in 2004. (R. at 279-95, 366-68.) From late 2004 through 2005, Plaintiff reported to Parkview Medical Group that she was experiencing continuing pain in her right wrist and frequent crying associated with depression, for which she received medications.[1] (R. at 359-65.) In 2006, the alleged onset date, she continued to report wrist pain and depression, and she also experienced leg pain, cramping and restless leg syndrome, for which her health care provider prescribed medication and recommended exercise. (R. at 356-58.)

On February 13, 2007, Plaintiff went to the emergency room of Phoenix Baptist Hospital with lower back pain. (R. at 411-12.) An ultrasound of the abdomen showed no abnormalities, and images of the spine showed mild narrowing of the disc space at L5-S1. (R. at 411-12.) The next day, Plaintiff followed up with Parkview Medical Group, and Dr. Chrostowski's examination revealed back and leg pain and restless leg syndrome as well as continued depression and anxiety. (R. at 354.)

On July 13, 2007, Plaintiff again went to Parkview Medical Group, and the examination revealed right hand pain and parasthesias—a tingling or pricking sensation in the hand caused by pressure on or damage to peripheral nerves. (R. at 350-51.) This, coupled with her restless leg syndrome, caused Plaintiff to worry she had peripheral

---

[1] Some of the medical treatment records from 2003 to 2006 are difficult to decipher, (*see* R. at 353-68), but these pre-date the alleged onset date.

vascular disease like her sister. (R. at 350.) Plaintiff reported being unable to sleep due to restless leg syndrome as well as pain and neuropathy. (R. at 350.) The health care provider ordered blood tests, including for multiple sclerosis and ankylosing spondylitis. (R. at 351.) In the July 16, 2007 blood test, Plaintiff's blood was positive for the antigen HLA-B27, which is "seen with a frequency of 90 percent in patients with ankylosing spondylitis" and "80 percent in patients with Reiter's disease." (R. at 372.)

In a follow-up on July 23, 2007, the Parkview Medical Group diagnosed Plaintiff with ankylosing spondylitis. (R. at 348.) Plaintiff reported joint pain that is worse in the morning but lasts all day, getting easily fatigued, and bruising easily, though she reported getting relief through medication. (R. at 348.) She also reported continuing depression and crying. (R. at 348.)

On August 7, 2007, Plaintiff again visited Parkview Medical Group and reported that she had a contusion on her left thigh from a fall and that, on account of joint pain, "her walking ability/tolerance is very limited and limited to a few stairs," and she had "difficulty with getting dressed, getting in and out of a chair, getting in and out of a car and putting on socks and shoes." (R. at 345.) Medication provided moderate but not totally effective control of her pain. (R. at 345.) Her gait and station examination revealed a "waddling gait" due to the pain in her left thigh. (R. at 346.) She also exhibited "generalized muscle weakness from [ankylosing spondylitis]." (R. at 346.) Plaintiff received crutches and pain medication. (R. at 346.)

In a follow-up examination on August 15, 2007, Plaintiff reported that muscle aches and bone stiffness made activity difficult and that she had difficulty doing house and yard work. (R. at 342.) The health care provider prescribed pain medications, counseled Plaintiff on "activity positioning," and referred Plaintiff to a rheumatologist and for physical therapy if possible. (R. at 343.)

A September 2007 MRI of Plaintiff's lumbar spine revealed degenerative disc changes at L5/S1 including narrowing of the disc space, mild narrowing of the neural

foramina, and a disc tear and bulge. (R. at 379.) There was also "central disc dessication" of the L4/L5 disc with "slight facet hypertrophic change." (R. at 379.)

On October 28, 2007, Plaintiff reported similar physical restrictions as previously and a walking ability/tolerance of less than five blocks. (R. at 337.) She reported she had "bad days with [severely] debilitating swollen joints, especially in her back and hips." (R. at 337.) The examination revealed a normal gait and full range of motion. (R. at 337.)

Dr. Greg Peetoom, a psychologist, examined Plaintiff on March 13, 2008. Plaintiff reported many symptoms of depression, which she believed correlated with the deterioration of her physical functioning ability. (R. at 414-16.) Plaintiff said she remains in bed many days for the entire day, though she can do some household work if the pain is not too bad. (R. at 415.) She also said she receives a lot of help from her son and a friend to get around. (R. at 415.) Dr. Peetoom concluded that Plaintiff has "significant symptoms of depression," observing that Plaintiff's "thoughts were sometimes preoccupied by her physical disability and her inability to counteract it," and that Plaintiff had "[m]ild to moderate limitations in short-term recall and concentration." (R. at 416.) He also noted that medication provided Plaintiff with some relief and that she might benefit from psychotherapy. (R. at 416.) In a "Psychological/Psychiatric Medical Source Statement" on March 25, 2008, Dr. Peetoom repeated that Plaintiff had mild to moderate limitations in short-term recall, concentration and persistence and added that Plaintiff "might be able to appropriately interact for brief periods of time, but her ability in this area is likely negatively correlated with the number of people present at any given time." (R. at 417.)

Plaintiff's remaining medical records from 2008 reveal largely the same symptoms and treatment. (*E.g.*, R. at 476-81.) Detailed records from 2009 and 2010 do not appear in the record, though the 2011 records refer to medical care in those years. (*E.g.*, R. at 464.) Dr. Melanie Alarcio evaluated Plaintiff's physical functional capacity on October 23, 2010, and found that her spine had a limited range of motion, that she had some trouble tandem walking and heel walking, that she was only able to give a 50 percent squat

1    before having a severe, sharp pain in her lower back, and that she exhibited spasms in her
2    lower back muscles. (R. at 421-22.) Dr. Alarcio recorded diagnoses of "degenerative
3    disease affecting the claimant's joints, possibly her back, with supposed spondylitis," and
4    "mental health issues." (R. at 422.) Dr. Alarcio concluded that Plaintiff could stand or
5    walk six to eight hours in an eight-hour workday but "may need a 10 minute break every
6    30-60 minutes because of the presence of limited range of motion of her lumbar spine as
7    well as the spasms noted." (R. at 422.) Dr. Alarcio assessed Plaintiff's maximum lifting
8    capacity as "20 pounds occasionally and 10 pounds frequently," and she concluded that
9    Plaintiff should never climb, only occasionally stoop, kneel, crouch, crawl, or reach, but
10   had no restrictions in handling, fingering or feeling. (R. at 423.) She also concluded
11   Plaintiff should not work around extremes in temperature, around chemicals, fumes or
12   gases, or around excessive noise. (R. at 424.) Dr. Alarcio advised Plaintiff to continue to
13   seek medical care for pain and better functioning. (R. at 424.)

14   In a visit to Desert Bloom Family Medicine on February 10, 2011, Plaintiff
15   reported she "cannot stand longer than 30 minutes," "cannot grip or hold onto anything,"
16   "has [limited] functioning," and "cannot get out of bed." (R. at 463.) She reported ten out
17   of ten pain. (R. at 463.) She also reported that she lost her health insurance and was now
18   covered by the Arizona Health Care Cost Containment System (AHCCCS). (R. at 463.)
19   The health care provider prescribed medications and counseled Plaintiff to, among other
20   things, exercise if possible and avoid heavy lifting and overuse of muscles. (R. at 467.)

21   In a visit to Phoenix Rheumatology Clinic on June 17, 2011, Plaintiff reported
22   constant pain in the lower back, wrists and knees as well as fatigue and difficulty
23   sleeping. (R. at 453.) Upon examination, her wrist, knee, ankle, elbow, neck and spinal
24   muscles were all tender. (R. at 453.) She had normal range of motion and gait. (R. at
25   453.) On July 22, 2011, Plaintiff visited Desert Bloom Family Medicine, reporting
26   depression. (R. at 441.) She again reported fatigue, difficulty sleeping and body aches.
27   (R. at 441.) In an examination, Plaintiff exhibited normal gait and posture, but painful
28   movements, including back movements and internal rotation of the hip. (R. at 443.) In

December 2011, Dr. Peetoom re-examined Plaintiff and again concluded that she presented as depressed and had some functional limitations, including being limited in her ability to comprehend, remember and carry out instructions. (R. at 505-07.)

## II. ANALYSIS

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R.

§ 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### A. The ALJ Did Not Provide Clear and Convincing Reasons for Finding Plaintiff Not Entirely Credible

Plaintiff disputes the ALJ's finding that when considering the combination of Plaintiff's impairments, Plaintiff's Residual Functional Capacity (RFC) allowed her to perform light work. Plaintiff's first argument is that the ALJ erred in her consideration of Plaintiff's symptom testimony. (Pl.'s Br. at 8-13.) While credibility is the province of the ALJ, an adverse credibility determination requires the ALJ to provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

At the hearing, Plaintiff testified that her activities are significantly limited by pain in her lower back, hands, knees, elbows and other joints, a weak grip strength on account of loss of sensation in her fingers, and depression. (R. at 43-53.) She also testified that she has one or two more "normal" days per week when she can "at least sit up and maybe carry a little bit of conversation with my sister-in-law or my brother." (R. at 49.)

The ALJ concluded that Plaintiff's testimony regarding the intensity, persistence and limiting effects of her symptoms was "not entirely credible." (R. at 20.) In support of that conclusion, she stated that "[t]he evidence shows the claimant has received routine care from 2004 through 2011, but since that time has not sought out or received further care." (R. at 20.) This justification is neither clear nor convincing. To begin with,

Plaintiff alleges an onset date of July 1, 2006, and she applied for benefits on July 28, 2011, receiving a denial on January 19, 2012. As the Court noted above, she made numerous visits to a variety of healthcare providers from 2006 to 2011—though the record contains a gap in the evidence around 2009 and much of 2010—and the observations made regarding Plaintiff's condition throughout that period were almost entirely consistent—principally pain in the back, legs and joints, problems with the hands, fatigue and depression. Plaintiff even saw a number of healthcare providers in 2011, after she lost her health insurance. It is unclear why the ALJ found that Plaintiff's post-2011 level of care important in discrediting Plaintiff's testimony about her symptoms.[2]

Moreover, the ALJ's finding that Plaintiff received only "routine care" in the relevant period is both unclear and unconvincing. Nothing in the record informs the ALJ or Court what level of care could be expected for a person suffering from ankylosing spondylitis, among other conditions, nor does the record contain evidence that a higher level of care was available that Plaintiff refused. If anything, and without wading into the area of formulating a medical opinion, the Court would find that Plaintiff's symptom testimony at the hearing was entirely consistent with Plaintiff's treatment records. The ALJ erred in finding Plaintiff's level of care was inconsistent with her symptom testimony. *See Tackett v. Apfel*, 180 F.3d 1094, 1103 (9th Cir. 1999) (rejecting ALJ finding when no medical opinion in the record supports it).

The ALJ also concluded that Plaintiff's symptom testimony was inconsistent with her reported activity. (R. at 20.) The record does not support that conclusion. While the medical records show that Plaintiff could sometimes engage in light activity such as grooming, hygiene and light housework,[3] Plaintiff also reported remaining in bed most

---

[2] Even if significant weight is placed on Plaintiff's post-2011 medical care, "a disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate [her] condition, if [she] cannot afford that treatment." *Regenitter v. Comm'r of Soc. Sec.*, 166 F.3d 1294, 1297 (9th Cir. 1998).

[3] Defendant makes much of the fact that Plaintiff "provid[es] care for her 23-year-old mentally challenged nephew and her aunt," (Def.'s Br. at 16), though the citation to

1  days. (*E.g.*, R. at 415.) The ability to carry out occasional activities of daily living does not make Plaintiff's reports of functional limitations less credible. *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). In addition, the ALJ does not point to what reported occasional activity would be inconsistent with what symptom. To the extent there may be a correlation, it is not obvious from either the ALJ's opinion or the medical record. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). As a result, the ALJ also erred in finding that Plaintiff's reported occasional activities were inconsistent with her symptom testimony.

Finally, the ALJ concluded that Plaintiff's September 2011 and August 2012 examinations indicated that Plaintiff had improved with treatment, such that her symptoms are not as severe as she claimed at the hearing. (R. at 21.) But evidence of improvement with treatment does not automatically negate Plaintiff's claimed symptoms or functional limitations, as the ALJ implied. *See Moore v. Comm'r, Soc. Sec. Admin.*, 278 F.3d 920, 924-25 (9th Cir. 2002). Furthermore, in supporting her finding that Plaintiff's symptoms improved by 2011 and 2012, the ALJ's reference to the record was selective. Apart from the fact that Plaintiff's treatment records in 2007 and 2008 regularly indicated the extent of Plaintiff's symptoms, in February and June of 2011, the health care providers did not report Plaintiff's symptoms had improved, but rather reported, among other things, that "pain was ten out of ten," "cannot stand longer than 30 minutes," "cannot grip or hold onto anything," "has [limited] functioning," and "cannot get out of bed." (*E.g.*, R. at 453, 463.) As with the other justifications, the ALJ's reliance

---

the ALJ's opinion (R. at 25) refers only to Plaintiff's care of her nephew. In her assessment of Plaintiff's functional capacity, Dr. Alarcio states Plaintiff "lives in a ground floor apartment with her 23-year-old mentally challenged nephew, who she is caring for." (R. at 420.) Upon the ALJ's questioning at the hearing, Plaintiff explained that, when her nephew was 15 and a half, his mother "was on drugs" and "went to prison and "he asked me if he could live—stay with me." Plaintiff felt "forced because I didn't want to see him out on the street," and he is like "a second son" to Plaintiff. But her nephew is able to shower and toilet by himself, and Plaintiff "didn't do anything." (R. at 52-53.) Nothing in Plaintiff's reports regarding living with her nephew appears inconsistent with her symptom testimony, and neither the ALJ nor Defendant make any further or more detailed correlation.

on selected notes indicating that Plaintiff showed improvement with treatment was neither a clear nor convincing reason to find Plaintiff less than credible.

The Court agrees with Plaintiff that, in this instance, the fact that the ALJ provided no clear and convincing reason to discredit Plaintiff's testimony is sufficient to warrant a reversal of the ALJ's determination that Plaintiff is not disabled under the Act. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1040-41 & n.12 (9th Cir. 2007) ("Further proceedings are unnecessary because the ALJ did not provide a legally sufficient reason for rejecting [Plaintiff's] testimony, which *alone* establishes that [Plaintiff] is entitled to benefits.")

### B.     The ALJ Erred in Applying the Examining Physicians' Opinions

Though the ALJ's error in assessing Plaintiff's credibility is dispositive, the Court will also address Plaintiff's argument that the ALJ misapplied the evaluations of the examining physicians, Dr. Peetoom and Dr. Alarcio, in assessing Plaintiff's RFC. (*See* Pl.'s Br. at 15-19.) An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996)). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*

In a 2008 psychological examination of Plaintiff, Dr. Peetoom found that Plaintiff had mild to moderate limitations in short-term recall, concentration and persistence. (R. at 414-17.) In 2011, Dr. Peetoom found that Plaintiff should be able to comprehend, remember and carry out simple work instructions. (R. at 501-07.) In her opinion, the ALJ states she gave both of Dr. Peetoom's evaluations "great weight." (R. at 24, 26.) But the RFC formulated by the ALJ reflects only limitations raised by Dr. Peetoom in the 2011 evaluation—that Plaintiff is limited to simple instructions—not Plaintiff's moderate limitations in short-term recall, concentration and persistence from the 2008 evaluation. The ALJ does not explain how she resolved the differences in Dr. Peetoom's two

1  opinions, both of which she gave great weight, or provide specific and legitimate reasons
2  for choosing the 2011 evaluation over the 2008 evaluation in light of the alleged onset
3  date of 2006. This error on its own would require remand for additional findings. *See*
4  *Brink v. Comm'r, Soc. Sec. Admin.*, 343 F. App'x 211, 212 (9th Cir. 2009); *Carmickle*,
5  533 F.3d at 1164.

6        Dr. Alarcio conducted a physical examination of Plaintiff in 2010, in which she
7  opined that Plaintiff "may need a 10 minute break every 30-60 minutes because of the
8  presence of limited range of motion of her lumbar spine as well as the spasms noted."
9  (R. at 422.) While the ALJ gave Dr. Alarcio's evaluation "great weight," she disregarded
10  the 10-minute break limitation because Plaintiff's "ability to engage in activities had
11  improved with treatment." (R. at 24-25.) As the Court laid out above with respect to
12  Plaintiff's symptom testimony, this justification to disregard the limitation Dr. Alarcio
13  assigned to Plaintiff is not legitimate. The ALJ thus erred in disregarding the limitation in
14  formulating Plaintiff's RFC. *See Carmickle*, 533 F.3d at 1164.

15        **C.**    **The Credit-As-True Rule Applies**

16        Plaintiff asks that the Court apply the "credit-as-true" rule, which would result in
17  remand of Plaintiff's case for payment of benefits rather than for further proceedings.
18  (Pl.'s Br. at 19-21.) The credit-as-true rule only applies in cases that raise "rare
19  circumstances" which permit the Court to depart from the ordinary remand rule under
20  which the case is remanded for additional investigation or explanation. *Treichler v.*
21  *Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1102 (9th Cir. 2014). These rare
22  circumstances arise when three elements are present. First, the ALJ must have failed to
23  provide legally sufficient reasons for rejecting medical evidence. *Id*. at 1100. Second, the
24  record must be fully developed, there must be no outstanding issues that must be resolved
25  before a determination of disability can be made, and the Court must find that further
26  administrative proceedings would not be useful. *Id*. at 1101. Further proceedings are
27  considered useful when there are conflicts and ambiguities that must be resolved. *Id*.
28  Third, if the above elements are met, the Court may "find[] the relevant testimony

credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id*. (citations omitted).

In this case, the credit-as-true rule applies. As the Court discussed above, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's symptom testimony and certain opinions of the examining physicians. Aside from the conflict between Dr. Peetoom's two assessments—which would not be dispositive here when crediting Plaintiff's symptom testimony—the Court sees no significant conflicts or ambiguities that are left for the ALJ to resolve. Moreover, considering the record as a whole, including Plaintiff's testimony as to her physical limitations—which the Court credits as a matter of law—and the corresponding testimony of the Vocational Expert (R. at 56-58), the Court is left with no doubt that Plaintiff is disabled under the Act. *See Garrison*, 59 F.3d at 1022-23; *Lingenfelter*, 504 F.3d at 1040-41 & n.12.

**III. CONCLUSION**

Plaintiff raises materially harmful error on the part of the ALJ, and, for the reasons set forth above, the Court must reverse the SSA's decision denying Plaintiff's Application for Disability Insurance Benefits and Supplemental Security Income benefits under the Act and remand for a calculation of benefits.

IT IS THEREFORE ORDERED reversing the September 18, 2013 decision of the Administrative Law Judge, (R. at 14-30), as upheld by the Appeals Council on March 13, 2015, (R. at 1-3).

IT IS FURTHER ORDERED remanding this case to the Social Security Administration for a calculation of benefits.

IT IS FURTHER ORDERED directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 29th day of September, 2016.

Honorable John J. Tuchi
United States District Judge